IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD DEKOVEN, | ) |
|                Plaintiff, | )<br>)  No. 05 C 3920 |
|                v. | ) |
| KNIGHT FRANK, LLP, | ) |
|                Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Ronald DeKoven ("Plaintiff"), a citizen of the state of Illinois, brings this Complaint against Defendant Knight Frank ("Defendant"), a limited liability partnership headquartered in London, England, alleging professional negligence and fraudulent misrepresentation. Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, Defendant moves to dismiss under the doctrine of *forum non conveniens*. For the reasons discussed below, the Court grants Defendant's Motion on the basis of *forum non conveniens*[1].

**BACKGROUND**

Plaintiff is a citizen of Chicago, Illinois who frequently travels to London for business purposes. (R. 7-2; Pl.'s Compl. at ¶¶ 1, 5.) Defendant, a real estate brokerage and consulting firm, is a limited liability partnership formed in the United Kingdom with its principal place of business in London, England. (R. 7-2; Def.'s Am. Notice of Removal at ¶ 3.) All of

---

[1] Because the Court grants the motion to dismiss on this basis, it need not address Defendant's personal jurisdiction argument.

Defendant's partners are citizens of either the United Kingdom or Spain. (*Id*. at ¶ 7.)

In April 2003, Plaintiff retained Defendant to help him find an apartment in London. (R. 7-2; Pl.'s Compl. at ¶ 10.) Mr. Simon Pritchard-Smith ("Pritchard-Smith"), a partner with Defendant, was Plaintiff's main contact. (*Id*.) With Pritchard-Smith's assistance, Plaintiff secured an apartment for lease in October 2003. (*Id.* at ¶ 11.) A few months later, Plaintiff and Pritchard-Smith viewed a residence that was for sale at 25 Wilton Place in London ("25 Wilton Place"). (*Id*. at ¶ 12.) Plaintiff alleges that he was hesitant to purchase 25 Wilton Place because he did not want a home that needed repair, but, according to Plaintiff, Defendant reassured him that the seller had obtained all the permits for the repairs. (*Id*.) Defendant further recommended a contractor ("Tyler London") to do any necessary work. (*Id*.) Based on these assurances, Plaintiff purchased 25 Wilton Place in June 2004 for 2.5 million British pounds.[2] (*Id*. at ¶ 13.)

Since the time of the purchase, however, Plaintiff contends that he has spent more than just the purchase price on 25 Wilton Place. Specifically, Plaintiff alleges that he has spent an additional 55,000 pounds on permits, 20,000 pounds on retainer of Tyler London, and has had to continue to pay rent on his apartment in London while simultaneously making monthly mortgage payments on 25 Wilton Place. (*Id*. at ¶¶ 16, 17.) In November 2004, Tyler London went bankrupt and has not completed the necessary repairs. (*Id*. at ¶ 19.) At present, Plaintiff alleges that he owns an uninhabitable home and must hire yet another contractor to fix it. (*Id*. at ¶ 24.)

---

[2]Plaintiff contends that one of the instances of negligence Defendant committed involved the purchase price of 25 Wilton Place. He claims that his initial bid was 2.4 million pounds, which was accepted by the seller. Defendant, however, failed to obtain the written agreement from the seller to remove the property from the market, and Plaintiff ended up having to raise his bid to 2.5 million pounds. (R. 7-2; Pl.'s Compl. at ¶ 13.) Defendant, not surprisingly, has a different interpretation of these events, but both agree that the final purchase price was 2.5 million pounds.

On March 7, 2005, Defendant filed a lawsuit against Plaintiff in London County Court alleging that Plaintiff failed to pay commission due to Defendant in connection with the purchase of 25 Wilton Place. (R. 11-1; Def.'s Mem. in Supp. of Mot. to Dismiss at Ex. A.) In his "Defence" to that action filed on May 26, 2005, Plaintiff claimed that Defendant's failure to secure the seller's written acceptance of his initial offer negated Defendant's right to the commission.[3] (*Id*. at Ex. B.) Plaintiff did not dispute the jurisdiction of the London courts in that action.[4] (*Id*.)

Approximately one week before submitting his "Defence" to the English suit, Plaintiff filed this lawsuit in the Circuit Court of Cook County asserting claims of professional negligence and fraudulent misrepresentation. (R. 7-2; Pl.'s Compl. at ¶ 1.) On July 13, 2005, Defendant removed this case to federal court based on diversity jurisdiction,[5] and now moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendant also moves to dismiss on the basis of *forum non conveniens*.

## ANALYSIS

**I.**  ***Forum non conveniens***

The doctrine of *forum non conveniens* allows a court to "dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of

---

[3]This claim is realleged as part of Plaintiff's Complaint in Illinois state court.

[4]*See* R. 11-1; Def.'s Mem. in Supp. of Mot. to Dismiss at Ex. F (Acknowledgment of Service in the London action). On that Acknowledgment, Plaintiff had three choices, (1) "I intend to defend all of this claim;" (2) "I intend to defend part of this claim;" or (3) "I intend to contest jurisdiction." Plaintiff checked the first box.

[5]Defendant previously tried to remove the case, but the Court remanded Defendant's initial attempt for failure to adequately plead diversity jurisdiction. (R. 6-1.)

justice." *In re: Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005) (citing *Kamel v. Hill-Rom Company, Inc.*, 108 F.3d 799, 802 (7th Cir. 1997)). When another forum has jurisdiction to hear a case, and when a trial in the plaintiff's chosen forum would "result in vexation and oppression to the defendant which would far outweigh the plaintiff's convenience, or when the chosen forum would generate administrative and legal entanglements for the trial court, the court may dismiss the case." *Id.* (citing *In re: Ford Motor Co.*, 344 F.3d 648, 651 (7th Cir. 2003).

## II.     The Doctrine of *Forum Non Conveniens* Requires Dismissal

A *forum non conveniens* analysis consists of two steps: (1) the court must determine whether an adequate alternative forum is available; and (2) the court must weigh the private and public interest factors related to the litigation. *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 643 (7th Cir. 2003); *see also Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 718 (7th Cir. 2002). In order to prevail, the movant must overcome the strong presumption in favor of the plaintiff's choice of forum. *See In re: Bridgestone/Firestone*, 420 F.3d at 703-04; *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990). When considering a motion to dismiss based on *forum non conveniens*, a court may consider the pleadings, affidavits, and "other documentary evidence submitted by the parties." *Pliva D.D. v. Baxter Int'l Inc.,* No. 03 C 7371, 2004 WL 2011391 at *4 (N.D. Ill. Aug. 24, 2004) (citing *Pyrenee, Ltd. v. Wocom Commodities Ltd.,* 984 F.Supp. 1148, 1152 n.2 (N.D. Ill. 1997)).

### A.     Adequate Forum

The viability of an alternative forum depends on two factors: availability and adequacy. A forum is considered available "if all parties are amenable to process and are within the forum's

jurisdiction." *Kamel,* 108 F.3d at 803 (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987) (en banc), *partially vacated on other grounds*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.E.2d 400 (1989)). The forum is adequate if the parties "will not be deprived of all remedies or treated unfairly" there. *Id.* (citing *Piper Aircraft,* 454 U.S. at 255).

Here, England is Defendant's requested alternative forum. Both parties are within the jurisdiction of the English courts. Defendant is a citizen of that country, and is therefore within its courts' jurisdiction. Plaintiff has already consented to the earlier suit in that jurisdiction based on these facts (R. 11-1; Def.'s Mem. in Supp. of Mot. to Dismiss at 8, n. 2), thus showing that he is also amenable to England's jurisdiction.

As to the adequacy of the relief, Plaintiff alleges that the "English courts will not provide the *same* remedies" and Plaintiff will be left "bereft of adequate remedy for his injuries." (R. 18-1; Pl.'s Resp. to Def.'s Mot. to Dismiss at 13, *emphasis added*). That, however, is of no consequence because a court may dismiss a case on *forum non conveniens* grounds even when the foreign forum lacks "the same range of remedies" that are available in the current forum. *Kamel,* 180 F.3d at 803 (citing *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993)). *See also In re: Bridgestone/Firestone*, 420 F.3d at 704 ("A forum is 'adequate' if 'the parties will not be deprived of *all* remedies or treated unfairly.'" *(emphasis added.)* It only matters that Plaintiff will have *some* remedy, and both parties agree that some remedy is available. Plaintiff merely states that it is not his preferred remedy. Because that alone is insufficient to render a forum inadequate, the Court finds that England is an adequate forum for this dispute.

## B. Private Interest Factors Analysis

Once a court determines that the forum is adequate, it must then consider the public and private interest factors involved. The private interest factors include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for the attendance of unwilling witnesses; (3) cost of obtaining the attendance of willing witnesses; (4) the possibility of viewing the premises; and (5) all other practical problems that make the trial easy, efficient, and economical. *Id.* (citing *Gulf Oil*, 330 U.S. at 508.)

The parties disagree on the impact of nearly every one of the private interest factors. With respect to the first factor, Plaintiff argues that "there is no source of proof that is unavailable...in this jurisdiction that is available in London." (R. 18-1; Pl.'s Resp. to Def.'s Mot. to Dismiss at 11). Defendant, however, contends that nearly all of the proof is in England and therefore, it is infinitely easier to access it there. (R. 11-1; Def.'s Mem. in Supp. of Mot. to Dismiss at 11). The Court agrees with Defendant. The properties, the witnesses, the permits, the seller, the contracts (if any), and Tyler London are all located in England, and there appear to be few, if any, sources of proof in Illinois.

As for the second factor, Defendant points out that there may be witnesses who are non-parties (the employees of Tyler London, the seller of 25 Wilton Place, and perhaps some experts) who may be unwilling to testify in Illinois. (*Id*. at 12). Although Plaintiff contends that there is no indication that any witness would refuse to testify in Illinois, compulsory process of these potential witnesses (should they be unwilling) would be more available, and therefore, more convenient, in England than in Illinois. The second factor therefore weighs in favor of Defendant.

The third factor requires a court to consider the costs of the attendance of willing witnesses. Certainly, it would be quite an expense for all the witnesses currently present in England to come to Illinois. This situation is similar to that in *Kamel*, where a Saudi Arabian citizen sued an Indiana manufacturer in Indiana, and the Indiana company sought removal to Saudi Arabia on grounds of *forum non conveniens*. *Kamel,* 108 F.3d at 801. There, the Seventh Circuit noted that besides Kamel and a few others, "all other pertinent and potential witnesses are located in Saudi Arabia." *Id.* at 804. The Seventh Circuit affirmed the district court's finding that Indiana was an inconvenient forum. *Id.* That is precisely the situation in the instant case. Other than Plaintiff and his fiancé (who live in England some of the time), all other witnesses are located in England, and therefore, Illinois is an inconvenient forum.

The fourth factor, however, weighs in Plaintiff's favor because the Court agrees that no significant value exists in viewing the premises of 25 Wilton Place. Plaintiff points out that the house is not in the condition it was in at the time of the events that led to this action, and therefore, a court sitting in either jurisdiction would have to rely on pictures, video, or witness testimony even if viewing of the premises was deemed necessary.[6] (R. 18-1; Pl.'s Resp. to Def.'s Mot. to Dismiss at 12.)

On balance, the private interest factors weigh in favor of England as the proper forum for this dispute.

### C. Public Interest Factors

---

[6]The fifth factor of "any other practical problems" is not addressed by the parties, so the Court does not address it either.

The Court considers the following public interest factors: (1) administrative difficulties involving court congestion; (2) local interest in having local disputes resolved at home; (3) interest in having the case decided in the forum whose law must govern the action; (4) avoidance of having to apply foreign law; and (5) unfairness of burdening citizens in an unrelated forum with jury duty. *In re: Bridgestone/Firestone*, 420 F.3d at 704 (citing *Kamel,* 108 F.3d at 803).

First, the Court must consider the administrative difficulties involving court congestion. Defendant points to statistical evidence that London County Courts resolve disputes on average far more quickly than the Northern District of Illinois. This factor weighs in favor of England's court.

The second factor illustrates a desire to have local disputes resolved locally. All of Plaintiff's allegations refer to a transaction that took place entirely in London. While Illinois certainly has an interest in protecting its citizens from harm, so does England. Since Defendant is an English company, and the transaction that led to the alleged professional negligence and fraud took place almost entirely in England, the danger of harm to British citizens is greater than it is to the few citizens of Illinois who may use Defendant's services to purchase real estate in England or elsewhere. Additionally, the parties are already involved in a legal dispute based on these facts. These factors point to England as the proper venue in which to continue this dispute.

The parties agree that English law applies here.[7] Even if the parties did not agree, the Court would still find that English law applies, and "the need to apply foreign law points toward

---

[7]In Plaintiff's Complaint, he alleges that Defendant owed him a "duty to comply with the standard of care expected of qualified real estate professionals in the London market." (R. 7-2; Pl.'s Compl. at ¶ 22.) Defendant agrees, saying that all factors "strongly favor the application of England's laws." (R. 11-1; Def.'s Mem. in Supp. of Mot. to Dismiss at 15.)

dismissal." *Piper Aircraft*, 454 U.S. at 260.[8]  Therefore, the third and fourth factors weigh in favor of dismissal.

Finally, should this case go to trial, forcing an Illinois jury to decide a case based on English law is impractical, and should not be imposed upon the people of a state with no significant relationship to the litigation. *Gulf Oil*, 330 U.S. at 508-09.

Upon balance, the factors weigh heavily in favor of England as the proper forum for this dispute. Therefore, the Court grants Defendant's motion to dismiss on grounds of *forum non conveniens*.

---

[8]For actions sounding in tort, Illinois applies the "most significant contacts" approach to choice of law determinations. *See Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593 (1970). Instead of merely counting each forum's contacts with the transaction and then selecting the forum with the highest tally, courts must consider each forum's contacts "in light of that [forum's] interest in having its law applied to the occurrence." *Vantassell-Matin v. Nelson*, 741 F.Supp. 698, 703 (N.D. Ill. 1990) (citing *Mitchell v. United Asbestos Corp.*, 100 Ill.App.3d 485, 492-93, 55 Ill.Dec. 375, 426 N.E.2d 350 (1981)). Illinois law recognizes the following as significant contacts: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *See Morris B. Chapman and Assocs. Ltd. v. Katzman*, 307 Ill.App.3d 92, 100, 240 Ill.Dec. 235, 716 N.E.2d 829 (1999). In this case, England has more significant contacts than Illinois. The injury occurred in London, the parties are all in London (Plaintiff admits he spends a significant amount of time there), and the relationship was created and grew in London. This suggests the extremely strong interest England has in this dispute, and it is therefore appropriate for English law to govern.

## **CONCLUSION**

Based on the forgoing reasons, the Court grants Defendant's Motion to Dismiss on grounds of *forum non conveniens*.

Dated: October 12, 2005

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**